# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA DITTMAR, an individual, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　　　　　　　Plaintiff,<br>　　vs.<br><br>COSTCO WHOLESALE CORPORATION, Washington corporation, and DOES 1 through 25, inclusive,<br><br>　　　　　　　　　　　　　　Defendants. | CASE NO. 14-CV-1156-LAB-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO REMAND; and**<br><br>**(2) DENYING DEFENDANT'S MOTION TO DISMISS OR STRIKE.** |

## I.   INTRODUCTION

On April 2, 2014, Plaintiff Paula Dittmar filed this putative class action in San Diego Superior Court against Defendant Costco Wholesale Corporation and numerous Doe defendants. Costco removed the case to federal court, invoking jurisdiction under both the Class Action Fairness Act ("CAFA") and traditional diversity jurisdiction. Costco later moved to dismiss or strike claims in the complaint. Dittmar seeks remand to state court, arguing that removal was improper. For the following reasons, her motion to remand (Docket no. 5) is **GRANTED** and Costco's motion to dismiss or strike (Docket no. 12) is **DENIED** as moot.

## II. BACKGROUND

This case involves a class wage and hour dispute. Costco, a Washington-based corporation, operates over 100 stores in California. Dittmar worked as a pharmacist and later as a pharmacy department manager at a San Diego Costco location from August 2010 to December 2013. She asserts claims on behalf of herself and other current and former Costco pharmacists and department mangers, alleging that Costco committed numerous violations of California labor law. Specifically, she claims Costco: (1) failed to pay overtime wages; (2) failed to pay agreed-upon wages for all hours worked; (3) failed to provide timely meal breaks; (4) failed to provide accurate itemized wage statements; (5) failed to pay unpaid wages due at termination; (6) failed to pay accrued vacation pay due at termination; (7) engaged in unlawful business practices; and (8) engaged in conversion. She seeks compensatory and punitive damages, penalties, restitution, interest, and attorneys' fees.

Dittmar's complaint sets out two classes of aggrieved employees: all current and former non-exempt Costco pharmacists in California for the past four years (the "Pharmacist Class"), and all current and former non-exempt Costco managers of any department who were paid hourly wages in California for the past four years (the "Department Manager Class"). (Docket no. 1-1.) Her complaint does not identify the putative class sizes, nor does it plead the amount in controversy.

Costco removed the case to federal court on May 7, 2014, invoking jurisdiction under both CAFA and traditional diversity. *See* 28 U.S.C. §§ 1332(d)(2) & 1332(a). Costco argues this case satisfies each of CAFA's jurisdictional requirements, including the statute's $5,000,000 amount in controversy. Relying on its employment history and payroll from the purported four-year statutory period, Costco avers that more than 400 pharmacists are members of the Pharmacist Class, and more than 100 pharmacy managers and 700 other department managers are members of the Department Manager Class. From these numbers Costco estimated class damages, attorneys' fees, and punitive damages to exceed $12,000,000. Costco alternatively argues that, independent of CAFA, removal is proper as the Court has diversity jurisdiction over Dittmar's individual claims. (Docket no. 1.)

Costco supports its notice of removal with a declaration from Patrick Callans, Costco's Senior Vice President of Human Resources and Risk Management. Callans explains he reviewed payroll and personnel information regarding Costco pharmacists and department managers who worked during the purported four-year statutory period (April 3, 2010 to April 3, 2014), and concludes there are over 1200 members of the putative classes. He also provides regular hourly pay rates for non-exempt Costco pharmacists, regular overtime pay rates for non-exempt pharmacy managers and other department managers, and the number of terminated class members during the four-year statutory period. (Docket no. 1-2.)

Dittmar moved to remand on June 5, 2014, arguing removal was improper because Costco made many improper assumptions in calculating the amount in controversy. She further argues that removal under diversity jurisdiction was improper as it would "undermine the strict requirements for establishing CAFA jurisdiction." (Docket no. 5-1.) She contends that the Court need not address this issue, however, because Costco has not shown by a preponderance of the evidence that her individual claims exceed $75,000. (*Id.*)

Costco's opposition to remand recalculates the amount in controversy and concludes that it has increased $3,000,000 from the notice of removal. Costco maintains that its assumptions underlying its calculation are appropriate given the breadth of Dittmar's claims in the complaint. Costco also argues that removal under diversity jurisdiction is proper, and that Dittmar's individual claims exceed $75.000. (Docket no. 11.)

The Court is presented with three questions. The first is whether the Court has subject matter jurisdiction over this action under CAFA. The second is whether the Court can exercise diversity jurisdiction over Dittmar's individual claims even when CAFA's amount in controversy requirement is not met. If the Court finds it has jurisdiction under either question above, the third is whether to dismiss or strike claims in the complaint.

## II. DISCUSSION

### A. Subject Matter Jurisdiction under CAFA

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See Kokkonen v. Guardian Life*

*Ins. Co.*, 511 U.S. 375, 377 (1994). The removal statute, 28 U.S.C. § 1441(a), authorizes a defendant to remove a case from state to federal court if the plaintiff could have originally brought the case in federal court. This statute is construed strictly against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). In other words, federal courts must resolve all doubts as to removability in favor of remand. *Id.*

Federal courts have subject matter jurisdiction under CAFA to hear class claims when: (1) any member of the plaintiff class is diverse from any defendant (i.e., minimal diversity); (2) the alleged class contains 100 or more members; and (3) the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d). The first and second requirements are met in this case: Dittmar is a California citizen and Costco is a Washington citizen, and the alleged class exceeds 100 members. The parties contest whether CAFA's $5,000,000 amount in controversy requirement is met.

### 1. Amount in Controversy Legal Standard

If the complaint does not plead a specific amount in controversy or seek a specific amount of damages, a defendant asserting removal under CAFA "must demonstrate, by a preponderance of the evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs., LLC*, 728 F.3d 975, 978 (9th Cir. 2013). The preponderance of the evidence standard requires a defendant to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1986).

Though a defendant is not required to "research, state, and prove the plaintiff's claims for damages," *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010), a court cannot base its finding of jurisdiction "on a [d]efendant's speculation and conjecture," *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1118 (C.D. Cal. 2010) (citing *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007), *overturned on other grounds*, *Rodriguez*, 728 F.3d at 977). "Rather, a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory

minimum." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Gaus*, 980 F.2d at 567). "[T]he court may consider facts in the removal petition, and may require parties to submit summary judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotations omitted).

### 2.   *Analysis*

Because Dittmar does not allege in her complaint a specific amount in controversy or seek a specific amount of damages, the preponderance of the evidence standard applies. *See Rodriguez*, 728 F.3d at 978. For this Court to have subject matter jurisdiction under CAFA, Costco must show by a preponderance of the evidence that the amount of damages put in controversy by Dittmar's complaint exceed $5,000,000. *Id.*

To show the amount in controversy, Costco presents two declarations of Patrick Callans, Costco's Senior Vice President of Human Resources and Risk Management. (Docket nos. 1-2 & 11-1.) Callans presents figures for the average amount of Costco pharmacists, pharmacy managers, and other department managers for any given workweek, as well as the regular hourly pay rate for pharmacists and hourly overtime pay rates for managers. (Docket no. 1-2.) More specifically, Callans avers there are: (a) 114 non-exempt pharmacists who have a regular hourly rate of $58.75; (b) 82 salaried non-exempt pharmacy managers who have a regular overtime rate of $63.22; and (c) 624 salaried non-exempt other department managers who have a regular overtime rate of $22.67. (*Id.*) Costco uses these figures along with some assumptions discussed below to calculate its $15,000,000 estimate.[1] Dittmar objects to Costco's estimate, arguing that it relies on improper assumptions and does not meet the preponderance of the evidence standard.

Costco's calculations assume that each class member was harmed the same extent. (Docket nos. 1 ¶ 17 & 11 at 11:3-9.) As support, Costco focuses on the complaint's language accusing Costco of using "uniform policies and procedures" to "consistently violate[

---

[1] Costco amended its first estimate of $12,000,000 (Docket no. 1 ¶ 29) to $15,000,000 in its opposition (Docket no. 11 at 12:13-24).

- 5 -

] California labor law," causing class members to suffer the "same or similar injuries." (*E.g.*, Docket no. 1 ¶ 17 (quoting Docket no. 1-1 ¶¶ 10(c)(I) & 11(e)(1)).) Costco contends this language shows that the complaint alleges all putative class members were harmed in an equal and uniform manner, adjusting for the regular hourly and overtime pay rates members received from their positions at Costco.

Costco uses this "uniform harm" rationale to calculate the amount of damages in six of eight causes of action in the complaint. For example, Costco construes the claim for unpaid overtime pay as alleging that each purported class member was denied fifteen minutes of overtime pay every two weeks over the span of four years.

The Court finds this reasoning unpersuasive. Costco has not shown the complaint's language warrants an assumption that every class member is harmed the same way or that Dittmar's individual injuries are identical to every other class member's. *See Molina v. Pacer Cartage, Inc.*, --- F. Supp. 3d ----, 2014 WL 4658756, at *3-4 (S.D. Cal., Sept. 17, 2014) (when dealing with a class of hundreds or thousands of workers, "class members may have claims of various sizes, [and] the person selected to be class representative is commonly, though not always, someone with a relatively large claim, or even the largest claim"). Evidence of what one randomly-selected class member may have experienced, or what the class representative did experience, does not speak to the overall distribution or number of uncompensated overtime hours, missed breaks, and incorrect itemized wage statements for the class as a whole – whether or not Costco's polices were uniform. *See id.* at *4.

Costco also makes several improper assumptions in calculating the amount in controversy. First, when calculating the unpaid overtime claim, Costco assumed that fifteen minutes of unpaid overtime for every two-week period would be a reasonable value for the greater than de minimis amount of damage Dittmar alleges. (Docket no. 1 ¶ 18.) This is not a proper de minimis analysis or valid method of determining an above-de minimis amount. *See Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984) ("[I]n determining whether otherwise compensable time is de minimis, we will consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of

compensable time; and (3) the regularity of the additional work."). Further, fifteen minutes is not a blanket or per se non-de minimis amount of time. *See id.* at 1062 ("There is no precise amount of time that may be denied compensation as *de minimis*. No rigid rule can be applied with mathematical certainty. Rather, common sense must be applied to the facts of each case.") (citations omitted). In any event, Costco's assumption for unpaid overtime pay does not lead to a conservative estimate. Costco cannot take fifteen minutes, multiply it by the amount of class members and 104 weeks, and call that estimate reasonable or conservative. This estimate is simply a guess.

Second, Costco argues that a 100% violation rate or one virtually identical to it applies to the incorrect itemized wage statements claim. (Docket nos. 1-1 ¶¶ 31-32 & 11 at 12.) Costco does not fairly assess the violation rate. In the complaint, Dittmar cites language in California Labor Code § 226(e)(1) to provide figures for class members to recover first time violation penalties of $50 per pay period and subsequent violation penalties of $100, with the aggregate amount not to exceed $4,000. Without any analysis or support other than its dubious assumption that all class members are alleged to be equally and uniformly harmed, Costco applies the $4,000 maximum amount to 800 of 820 class members.[2] While Costco calls its estimate "conservative" because 800 out of 820 class members is not a 100% violation rate but rather a 97.5% rate (Docket no. 11 at 12), extracting the maximum penalty for nearly each class member is not a reasonable or conservative estimate. A 2.5% difference cannot be construed as a meaningful distinction in this context.[3]

Courts have consistently held that assumptions without any supporting evidentiary

---

[2] Costco used the Callans declaration to pick 820 as representing the average amount of class members working during any given workweek. Costco does not provide a rationale for picking 800 members from that amount.

[3] Considering the assumptions already discussed, Costco makes a third improper assumption in calculating attorneys' fees and punitive damages. Because its calculations for attorneys' fees and punitive damages are wholly dependant on what the claims place in controversy, Costco's previous errors foreclose any reasonable opportunity to effectively consider whether such damages would be reliable or appropriate to apply. *See, e.g., Hughes v. McDonald's Corp.*, 2014 WL 3797488, at *8-9 (N.D. Cal., July 31, 2014) (calculating attorneys' fees in CAFA actions cannot be speculative and is based at the time of removal) (citing *Conrad Assoc. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998)).

- 7 -

weight are speculative and cannot be used to show the amount in controversy. *E.g., Roth*, 799 F. Supp. 2d at 1124 (granting plaintiff's motion to remand in wage and hour case because defendant's calculations were unsupported under the preponderance of the evidence standard); *Ray v. Nordstrom, Inc.*, 2011 WL 6148668, at *3-4 (C.D. Cal., Dec. 9, 2011) (same); *Fong v. Regis Corp.*, 2014 WL 26996, at *2-3 (N.D. Cal., Jan. 2, 2014) (same). Though Costco points to several decisions holding that the removing defendant is entitled to make assumptions when determining the amount in controversy, the Court finds these cases unpersuasive as "they shift the burden to the plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction." *Roth*, 799 F. Supp. 2d at 1129 (citing *Abrego*, 443 F.3d at 685)). If the Court were to allow Costco to remove the case to federal court based mainly, if not completely, on the assumption that every class member was harmed precisely the same, it would vitiate settled law that the defendant has the burden to establish the amount of controversy for removal. *Abrego*, 443 F.3d at 685.

Finally, independent of the problematic assumptions discussed above, Costco makes a fatal mistake in calculating the amount in controversy. When estimating the total damages for the "Department Manager Class," Costco relies on Callan's figures for "*salaried* non-exempt pharmacy managers and other department managers working in California from April 3, 2010 to April 3, 2014." (Docket no. 1-2 (emphasis added).) But the complaint provides different language: it defines the "Department Manager Class" as "[a]ll current and former non-exempt managers of any department at [Costco California] business[es] who were paid *hourly* compensation . . . ." (Docket no. 1-1 ¶ 9 (emphasis added).) The Department Manager Class in the complaint does not include those who were salaried department managers, nor does it put their damages in controversy. Costco erred by relying on inapplicable figures in the declaration to calculate the amount in controversy. And this is no small error. Callans's figures for the Department Manager Class are the purported basis of total damages for over 800 members of the 1200 member class.

///

///

1 Based on the above, Costco failed to show by a preponderance of the evidence that
2 the complaint meets the $5,000,000 threshold. The Court therefore finds it lacks subject
3 matter jurisdiction under CAFA over this action.

**B.     Subject Matter Jurisdiction under 28 U.S.C. § 1332(a)**

Costco alternatively argues that removal is proper under traditional diversity jurisdiction because complete diversity exists and Dittmar's individual claims exceed $75,000. *See* 28 U.S.C § 1332(a).[4] Dittmar disagrees, and argues that permitting removal based on diversity jurisdiction would undermine the strict requirements for establishing CAFA jurisdiction. Dittmar further contends that Costco cannot show by a preponderance of the evidence that Dittmar's individual claims exceed $75,000.

The application of § 1332(a) here presents two issues. The first is whether Costco may legally remove a class action to federal court notwithstanding CAFA's jurisdictional provisions. If this requirement is met, the second is whether Dittmar's individual claims satisfy the $75,000 amount in controversy requirement for traditional diversity jurisdiction.

***1.     Application of § 1332(a) to Class Actions Notwithstanding CAFA***

Dittmar has not identified, and the Court has not found, any precedent in support of the proposition that 28 U.S.C. § 1332(a) is inapplicable to putative class action lawsuits, or that CAFA restricts the federal judiciary's subject matter jurisdiction over diversity-based putative class actions to those that seek more than $5,000,000 in damages. Rather, CAFA explicitly expands diversity jurisdiction rather than diminishes its scope. *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 740 (2014) (Congress enacted CAFA in order to loosen the requirements for diversity jurisdiction over certain class actions); *see also* 14C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris* § 3728 (4th ed.) ("Insofar as [CAFA] creates original jurisdiction over cases that previously were beyond federal diversity subject-matter jurisdiction, [CAFA] enlarges the universe of cases that may be removed pursuant to 28 U.S.C.A. § 1441.").

---

[4] Under this theory the Court would need to exercise supplemental jurisdiction over class claims pursuant to *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005).

In 2011, the Third Circuit affirmed a district court's ruling that a defendant properly established subject matter jurisdiction over plaintiff's individual claims pursuant to § 1332(a) – even though the case itself was a putative class action that did not meet CAFA's provisions. *Shah v. Hyatt Corp.*, 425 F. App'x 121, 124-25 (3d Cir. 2011). *Shah* thus implicitly rejected the argument Dittmar makes here. In other words, *the Shah* court determined that a putative class action may be removed as to the named plaintiff if traditional diversity jurisdiction is satisfied, regardless of whether CAFA's requirements are also satisfied. *See id.* At least two district courts have followed the same reasoning. *See Sacchi v. ABC Financial Services, Inc.*, 2014 WL 4095009, slip op. at *2-3 (D.N.J., Aug. 18, 2014) (CAFA constitutes a separate bases for removal than 28 U.S.C. § 1332(a), and CAFA does not limit the scope of traditional diversity jurisdiction); *see also Martinez v. Morgan Stanley & Co.*, 2010 WL 3123175, at *5 (S.D. Cal., Aug. 9, 2010).

Based on the following, the Court concludes that CAFA does not limit traditional diversity jurisdiction's application here. The Court must next determine whether Costco established that Dittmar's individual claims exceed $75,000.

### *2.  Amount In Controversy*

For reasons similar why the $5,000,000 threshold is not met, Costco also fails to establish that Dittmar's individual claims exceed $75,000. Primarily, 626 of Dittmar's 641 work shifts (97.7%) occurred when she was a salaried non-exempt pharmacy manager. These shifts do not fall within the ambit of "hourly compensation" in the Department Manager Class (Docket no. 1-1 ¶ 9), and therefore Costco erred in applying them to the amount in controversy calculation.

Irrespective of this mistake, Costco's calculations are also speculative and grounded on arbitrary figures. For example, Costco calculates Dittmar's individual unpaid overtime claim with the familiar faulty assumption that she has at least fifteen minutes of unpaid overtime pay for *every* shift she worked through the four year period. Nothing in the complaint alleges she was denied unpaid overtime pay for every shift she worked, let alone every shift for over four years. Another example comes from the meal and rest break claims.

Costco calculates the amount in controversy with the assumption that Dittmar was not provided a meal or rest break once every four work shifts. Nothing in the complaint alleges this harm occurred once every four shifts, or suggest such a high frequency. The Court is not convinced Dittmar's individual claims have met the $75,000 threshold under the preponderance of the evidence, and thus finds it lacks traditional diversity jurisdiction over her action.

Because Costco has not met its burden to establish federal subject matter jurisdiction under CAFA or traditional diversity jurisdiction, the Court accordingly **GRANTS** Dittmar's motion to remand to state court.

### C. Costco's Motion to Dismiss or Strike

Because this Court lacks jurisdiction over this action, Costco's motion to dismiss or strike is **DENIED** as moot.

### V. CONCLUSION

While Costco need not research, state, and prove Dittmar's claims for damages, it must at least provide a reasonable basis for concluding that its estimates are sound. Costco has not met its burden of meeting CAFA's $5,000,000 threshold or diversity jurisdiction's $75,000 threshold. The Court lacks subject matter jurisdiction over this action, and Costco's motion to dismiss or strike is moot. The Court accordingly **GRANTS** Dittmar's motion to remand, and **DENIES** Costco's motion to dismiss or strike.

**IT IS SO ORDERED**.

DATED: November 4, 2014

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge