1  Raul Perez (State Bar No.174687)
   Andrew J. Sokolowski (State Bar No. 226685)
2  Jennifer Bagosy (State Bar No. 223145)
   Suzy E. Lee (State Bar No. 271120)
3  CAPSTONE LAW APC
   1875 Century Park East, Suite 1000
4  Los Angeles, California 90067
   Telephone:    (310) 556-4811
5  Facsimile:    (310) 943-0396

6  Aaron C. Gundzik (State Bar No. 132137)
   Rebecca G. Gundzik (State Bar No. 138446)
7  GARTENBERG GELFAND HAYTON LLP
   15260 Ventura Blvd., Suite 1920
8  Sherman Oaks, California 91403
   Telephone:    (213) 542-2100
9  Facsimile:    (213) 542-2101

10  Attorneys for Plaintiffs Marjan Ataipour and Brian Kim.

11  (Additional Counsel listed on following page)

12              UNITED STATES DISTRICT COURT

13            SOUTHERN DISTRICT OF CALIFORNIA

14

15  PAULA DITTMAR, PAULINE TILTON,          Case No.: 3-14-CV-1156-LAB-JLB
    MARJAN ATAIPOUR and BRIAN KIM,
16  individually and on behalf of all others  The Honorable Larry Alan Burns
    similarly situated,
17                                          **NOTICE OF MOTION AND MOTION**
              Plaintiffs,                   **FOR PRELIMINARY APPROVAL OF**
18                                          **CLASS AND COLLECTIVE ACTION**
              vs.                           **SETTLEMENT; MEMORANDUM OF**
19                                          **POINTS AND AUTHORITIES**
    COSTCO WHOLESALE
20  CORPORATION, a Washington               Date:    August 14, 2017
    corporation; and DOES 1 through 25,     Time:    11:30 a.m.
21                                          Place:   Courtroom 14A
              Defendant.
22  individually and on behalf of all others
    similarly situated,
23

24

25

26

27

28

1

Marshall A. Caskey (State Bar No. 65410)
Daniel M. Holzman (State Bar No. 176663)

2

CASKEY & HOLZMAN
24025 Park Sorrento, Ste. 400

3

Calabasas, California 91302
Telephone:    (818) 657-1070

4

Facsimile:    (818) 297-1775

5

Attorneys for Plaintiffs,
individually and on behalf of all others similarly situated

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 14, 2017 at 11:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 14A of the above-captioned court, located at 333 West Broadway, Suite 1410, San Diego, CA 92101, the Honorable Larry Alan Burns presiding, Plaintiffs will, and hereby do, move this Court to:

1. Preliminarily approve the settlement described in the Joint Stipulation of Class Action Settlement and Release, attached as Exhibit 1 to the Declaration of Raul Perez;

2. Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

3. Appoint CPT Group, Inc. as the Settlement Administrator; and

4. Set a hearing date for final approval of the settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Raul Perez; (4) the Declaration of Aaron Gundzik; (5) the Declaration of Daniel M. Holzman; (6) the Joint Stipulation of Class Action Settlement and Release; (7) the Notice of Class Action Settlement; (8) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (9) the records, pleadings, and papers filed in this action; and (10) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated: June 16, 2017                    Respectfully submitted,

                                        By: _____
                                        Raul Perez
                                        Andrew J. Sokolowski
                                        Jennifer Bagosy
                                        Suzy E. Lee

                                        **Capstone Law APC**
                                        Attorneys for Marjan Ataipour and
                                        Brian Kim

# TABLE OF CONTENTS

I.      INTRODUCTION....................................................................................1

II.     FACTS AND PROCEDURE.................................................................3

    A.      Overview of the Litigation..............................................................3

    B.      The Parties Settled After Mediation .............................................4

    C.      Plaintiffs Ataipour and Kim Agreed to Serve as Class
           Representatives .................................................................................5

    D.      The Proposed Settlement Fully Resolves Plaintiffs' Claims ...................6

         1.      Composition of the Settlement Class................................6

         2.      Settlement Consideration ................................................6

         3.      Formula for Calculating Settlement Payments ...............7

         4.      Release by the Settlement Class.......................................9

III.    ARGUMENT ........................................................................... 10

    A.      Conditional Class Certification is Appropriate for Settlement
           Purposes........................................................................... 10

         1.      Plaintiffs' Theory of Liability Warrants Class
             Certification....................................................... 11

         2.      Plaintiffs' Meal and Rest Period Claim Presents
             Predominant Common Issues of Law and Fact........................... 12

         3.      Plaintiffs' Off-the-Clock Claim Presents Predominant
             Common Issues of Law and Fact................................... 14

         4.      Plaintiffs' Other Claims Present Predominant
             Common Issues of Law and Fact................................... 14

         5.      Marjan Ataipour and Brian Kim Will Adequately
             Represent the Interests of the Proposed Settlement
             Class ................................................................... 15

| | | | |
|---|---|---|---|
| | 6. | Class Settlement Is Superior to Other Available Means of Resolution | 16 |
| | 7. | Conditional Certification of the Collective Action Class is Also Appropriate | 17 |
| B. | | The Proposed Class Action Settlement Should Receive Preliminary Approval | 18 |
| | 1. | The Court's Scrutiny of the Proposed Settlement is Lowered at the Preliminary Approval Stage | 18 |
| | 2. | The Proposed Class Action Settlements is Procedurally Fair, Adequate, and Reasonable | 19 |
| | | (a) The Settlement, as the Product of Arms'-Length Negotiation, is Entitled to a Presumption of Fairness | 19 |
| | | (b) There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members | 20 |
| | | (c) The Parties Conducted a Thorough Investigation of the Factual and Legal Issues | 21 |
| | 3. | The Proposed Settlement Is Substantively Within the Range of Reasonableness | 23 |
| C. | | The Court Should Approve the PAGA Component of the Settlement | 24 |
| D. | | The Court Should Preliminarily Approve the Negotiated Class Representative Enhancement Payments | 25 |
| E. | | The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs | 26 |
| F. | | The Proposed Class Notice Adequately Informs Class Members About the Case and Proposed Settlement | 27 |

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

IV.    CONCLUSION...................................................................................... 29

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

# TABLE OF AUTHORITIES

2

3 **FEDERAL CASES**

4 *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513 (C.D. Cal. 2011) ........................................... 11

5 *Amochaev v. Citigroup Global Markets, Inc.*, No. 05-1298 PJH (N.D. Cal.
6    Aug. 13, 2008) .............................................................................................. 25

7 *Bernal v. Davita, Inc.*, Case No. 5:12-cv-03255-PSG (N.D. Cal. Jan. 14,
8    2014) .................................................................................................................. 25

9 *Carter v. Anderson Merchandizers LP*, No. 08-0025-VAP, 2010 WL
10    1946784 (C.D. Cal. May 11, 2010) ...................................................................... 18

11 *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................ 19

12 *Cortes v. Market Connect Group, Inc.*, 2015 WL 5772857 (S.D. Cal. Sept.
13    30, 2015) ........................................................................................................... 11, 16

14 *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ........................................... 20

15 *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .............................................. 11, 27

16 *Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ................................................... 19

17 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................ 16, 17, 19

18 *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS
19    33900 (N.D. Cal. Apr. 3, 2009) ............................................................................ 25

20 *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),
21    2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ...................................... 20

22 *In re AutoZone, Inc.*, 289 F.R.D. 526 (N.D. Cal. 2012) ............................................. 11

23 *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................. 21

24 *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 .................................................... 26

25 *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp.
26    2d 708 (E.D. Pa. 2014) ......................................................................................... 19

27 *In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078 (N.D. Cal. 2007) .................... 19

28

*In re Taco Bell Wage & Hour Actions*, 07-01314-SAB, 2012 U.S. Dist.

LEXIS 168219 (E.D. Cal. 2012) ................................................................. 11

*In re Volkswagen (Clean Diesel) Mktg., Sales Practices, and Prods. Liab.*

*Litig.*, 2016 WL 4010049 (N.D. Cal. July 26, 2016).......................20, 21, 23

*Int'l Union of Operating Engineers-Employers Canst. Industry Pension,*

*Welfare and Training Trust Funds v. Karr*, 994 F.2d 1426 (9th Cir.

1993)........................................................................................................... 10

*Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) .................................. 11

*La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014

WL 2967475 (C.D. Cal. June 25, 2014)..................................................... 21

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) ......................................... 11

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ....................... 24

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995).................. 26

*Matter of Continental Illinois Securities Litig.*, 962 F.2d 566 (7th Cir. 1992)............. 26

*McAtee v. Capital One, F.S.B.*, 479 F.3d 1143 (9th Cir. 2007)...................................... 26

*Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL

4142342 ((S.D. Cal. Aug. 4, 2016) ............................................................. 19

*Norris-Wilson v. Delta-T Group, Inc.* 270 F.R.D. 596 (S.D. Cal. 2010) ...................... 14

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................... 23

*Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009) ........................... 15

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009)..................................23, 26

*Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS

107857 (N.D. Cal. Sept. 29, 2010).............................................................. 25

*Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453 (N.D. Cal. Mar. 24,

2016)........................................................................................................... 19

*Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119

(C.D. Cal. Feb. 25, 2008) ........................................................................... 25

*Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095 (10th Cir.2001).............. 18

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................................ 26

*Wal-Mart Stores, Inc. v. Dukes,*546 U.S. 338 (2011)..................................................... 11

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ........................... 17

*Wynn v. Nat'l Broadcasting Co., Inc.*, 234 F. Supp. 2d 1067 (C.D. Cal. 2002).......................................................................................................................... 17

*York v. Starbucks Corp.*, No. 08-07919 GAF, Dkt. No. 239 (C.D. Cal. Oct. 29, 2013) ....................................................................................................................... 25

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001).................... 10, 16

**STATE CASES**

*Augustus v. ABM Security Servs., Inc.*, 2 Cal. 5th 257 (2016)........................................ 12

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012).............12, 13, 14

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ................................................... 27

*Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524 (2008) ........................... 14

*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010) ....................................... 14

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (2016) ...................................................... 27

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000)........................................... 27

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ................................................ 25

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ....................................................................... 26

**FEDERAL STATUTES**

29 U.S.C. § 216(b) ........................................................................................................ 17

Fed. R. Civ. P. 23 .......................................................................................................... 17

Fed. R. Civ. P. 23(a) ...............................................................................................10, 15, 16

Fed. R. Civ. P. 23(a)(2) ................................................................................................. 11

Fed. R. Civ. P. 23(a)(4) .............................................................................................15, 16

Fed. R. Civ. P. 23(b) ..................................................................................................... 10

Fed. R. Civ. P. 23(b)(3) .............................................................................................10, 11

Fed. R. Civ. P. 23(c)(2) ......................................................................... 27, 28

Fed. R. Civ. P. 23(e)(1)(A) ........................................................................ 18

**STATE STATUTES**

8 Cal. Code of Regs. § 11050(12)(B) ........................................................ 12

Cal. Lab. Code § 201 ................................................................................. 15

Cal. Lab. Code § 202 ................................................................................. 15

Cal. Lab. Code § 226(a) ...................................................................... 14, 15

Cal. Lab. Code § 226(e) ............................................................................ 15

Cal. Lab. Code § 226.7(b) ......................................................................... 12

Cal. Lab. Code § 512(a) ............................................................................ 13

**SECONDARY AUTHORITIES**

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) .............. 18, 19

*Manual for Complex Litigation*, Fourth (Fed. Judicial Center 2004) .............. 18, 28

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) .............. 28

Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil
    Procedure Before Trial, California & 9th Cir. Editions (The Rutter
    Group, 2015) ...................................................................................... 26

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action
    Settlements:  An Empirical Study*, J. of Empirical Legal Studies, Vol. 1,
    Issue 1, March 2004 ........................................................................... 27

*William B. Rubenstein et al.*, *Newberg on Class Actions* (4th ed. 2008) ...... 26

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs Marjan Ataipour and Brian Kim seek preliminary approval of the Joint Stipulation of Class Action Settlement and Release,[1] which, if approved, would provide valuable monetary relief for approximately 1,175 current and former employees of Defendant Costco Wholesale Corp. ("Defendant" or "Costco") (collectively with Plaintiffs, the "Parties").

The basic terms of the Settlement provide for the following:

(1)  A Settlement Class defined as:  All pharmacists and pharmacy managers employed in a California warehouse by Defendant as such at any time during the period from April 3, 2010 through the date on which the Court grants preliminary approval of the settlement, or August 29, 2017, whichever date is earlier.  (Settlement Agreement ¶ 5.)

(2)  A Class Settlement Amount of $9,000,000.  The Class Settlement Amount includes:

(a)  A Net Settlement Amount of approximately $5,795,000 (calculated as the Class Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, the payment to the California Labor and Workforce Development Agency ["LWDA"], and the Class Representative Enhancement Payments), which will be allocated to all Class Members on a pro-rata basis according to the number of Shifts each Class Member worked during the Class Period.  **The Entire Net Settlement Amount will be paid to all Class Members who do not opt out of the Settlement Class, and without the need to submit claims for**

---

[1] Hereinafter "Settlement Agreement" or "Settlement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

1      **payment.**

2      (b)    Attorneys' fees not to exceed one-third of the Class Settlement

3             Amount (or $3,000,000) and litigation costs and expenses not to

4             exceed $125,000, to Capstone Law APC; Gartenberg Gelfand,

5             Hayton LLP; and Caskey & Holzman (collectively, "Plaintiffs'

6             Counsel").

7      (c)    Settlement Administration Costs, currently estimated at $17,500, to

8             be paid to the jointly selected settlement administrator, CPT Group,

9             Inc.

10     (d)    A $37,500 payment to the LWDA pursuant to the Labor Code

11            Private Attorneys General Act of 2004 ("PAGA").

12     (e)    Class Representative Enhancement Payments of $12,500, each, to

13            Marjan Ataipour and Brian Kim for their services on behalf of the

14            Settlement Class and for agreeing to broader releases than those

15            required of other Class Members.

16     The relief negotiated on behalf of the Class is fair, reasonable, and valuable. The

17     Settlement was negotiated by the Parties at arm's length with helpful guidance from

18     Mark S. Rudy, Esq., an experienced and well-respected class action mediator, and the

19     Settlement confers substantial benefits to Class Members. This relief—averaging over

20     $4,900 per Class Member—is particularly impressive when viewed against the

21     difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by

22     settling now rather than proceeding to trial, Class Members will not have to wait

23     (possibly years) for relief, nor will they have to bear the risk of class certification being

24     denied or of Defendant prevailing at trial.

25     As discussed below, the proposed Settlement satisfies all criteria for preliminary

26     settlement approval under federal law and falls within the range of reasonableness.

27     Accordingly, Plaintiffs respectfully request that this Court grant preliminary approval of

28     the Settlement Agreement.

## II.      FACTS AND PROCEDURE

### A.      Overview of the Litigation

The initial Plaintiffs, Paula Dittmar and Pauline Tilton, were pharmacists and pharmacy managers at Costco locations in California.  Dittmar filed this wage and hour class action in the San Diego County Superior Court on April 3, 2014.  Costco removed the case to this Court on May 7, 2014.  (ECF No. 1.)  On November 5, 2014, the Court granted Dittmar's motion to remand, and denied as moot Defendant's Motion to Dismiss or Strike.  (ECF No. 16.)  On February 27, 2015, while on remand to San Diego County Superior Court, Dittmar filed a First Amended Class Action Complaint which, among other things, added Tilton as a plaintiff.  (Declaration of Raul Perez ["Perez Decl."] ¶ 2.)

In their pleadings, Plaintiffs alleged that they worked many hours when they were not clocked in, as they were not permitted to record overtime, yet had to complete all of their job duties.  Plaintiffs further alleged that although they could not record all of their overtime, they were required to send and respond to emails and text messages when they were not clocked in.  They also alleged that their off-the-clock work included filing, scheduling, reviews, and other paperwork.  Plaintiffs also alleged that during the same period, Costco had a policy for pharmacists who worked single pharmacy shifts that prevented them from taking uninterrupted rest breaks.  Plaintiffs contended that Costco's policy requires that pharmacists working alone to take rest breaks inside the pharmacy.  Further, the policy requires solo pharmacists to remain on call during rest breaks and to be ready to perform certain tasks that, by law, only licensed pharmacists can perform.  Accordingly, as applied to solo pharmacists, Plaintiffs contended that Costco's rest policy unlawfully has required on call rest breaks.  (Perez Decl. ¶ 3.)

On March 6, 2015, after Costco's successful petition for an interlocutory appeal, the Ninth Circuit vacated the November 5, 2014 order remanding the case to state court, and remanded this case to the District Court with instructions to consider intervening authority, and this Court again assumed jurisdiction over the case.  (ECF No. 22.)  After further briefing regarding remand to state court, on November 13, 2015 the Court denied

1    Plaintiffs' motion to remand the case to state court.  (ECF No. 43.)  On July 21, 2016,

2    after Costco filed multiple Motions to Dismiss and Plaintiffs amended the complaint

3    several times, the Court and the parties settled all pleading-related issues and Plaintiffs

4    filed the Third Amended Class Action Complaint.  (ECF No. 71.)  On October 12, 2016,

5    after the Parties submitted a joint discovery plan, and after a conference with the

6    presiding Magistrate, the Court issued a Scheduling Order Regulating Discovery and

7    Other Pre-trial Proceedings (ECF No. 84).  (Perez Decl. ¶ 4.)

8         The Parties conducted substantial discovery.  Defendant deposed the original

9    Named Plaintiffs.  Plaintiffs' Counsel deposed multiple witnesses, including Dittmar's

10   warehouse manager Jeanne Rosolino, Dittmar's pharmacy regional manager Brad

11   Heiner, Tilton's pharmacy regional manager Barry Meizel, former Dittmar co-worker

12   (and current Costco pharmacist) Deana Martorana, Costco's corporate designee Sarah

13   Rajski, and Costco's Assistant Vice President of Pharmacy Operations for the Southwest

14   Division Joanne Lawson.  Plaintiffs' Counsel also filed motions to compel related to the

15   scope of discovery (ECF No. 85) and to compel production of documents (ECF No.

16   110).  In the course of discovery, Plaintiffs' Counsel received and reviewed thousands of

17   pages of Costco documents including policies, performance reviews, employee manuals,

18   and emails.  Plaintiffs' Counsel also began preparing the Motion for Class Certification.

19   (Perez Decl. ¶ 5.)

20        Further, Plaintiffs retained an expert, David Lewin of Berkeley Research Group.

21   Dr. Lewin designed a survey to disseminate to class members confirming that working

22   off-the-clock was a common experience, quantifying the amount of unpaid overtime,

23   and identifying the tasks class members performed when they were working off-the-

24   clock.  (Perez Decl. ¶ 6.)

25        **B.    The Parties Settled After Mediation**

26        On March 14, 2017, the parties participated in a full day of mediation to see if

27   they could resolve the case.  At Plaintiffs' Counsel's request, Costco provided, in

28   addition to the materials and information produced during formal discovery, further

information and data to allow Plaintiffs' Counsel to properly value the case for a putative class of Costco's Pharmacists and Pharmacy Managers throughout California. The mediator was Mark S. Rudy, a well-known mediator of wage-and-hour class actions. Although the parties did not settle at mediation, they continued the settlement talks with participation of Mr. Rudy and he eventually made a mediator's proposal. Ultimately, both parties accepted the mediator's proposal. (Perez Decl. ¶ 11.)

### C.     Plaintiffs Ataipour and Kim Agreed to Serve as Class Representatives

As discussed in the Motion to Amend Complaint and Withdraw as Counsel for Plaintiffs Dittmar and Tilton, both Dittmar and Tilton refused to sign the Memorandum of Understanding memorializing the mediation terms, despite having assented to the terms when they were communicated orally. Plaintiffs' Counsel's repeated efforts to contact Dittmar and Tilton and address their concerns were unsuccessful. (Perez Decl. ¶ 12.)

Throughout the litigation, including during the period when the MOA was being negotiated, Plaintiffs' Counsel continued to have contact with putative class members regarding their claims in this case. During this period, former Costco pharmacists Marjan Ataipour ("Ataipour") and Brian Kim ("Kim") retained Plaintiffs' Counsel. Both Ataipour and Kim allege claims against Costco similar to those alleged by Plaintiffs. Further, Ataipour and Kim have reviewed the MOA, understand the terms of the class settlement, agree with counsel that the settlement terms are fair and reasonable, and are willing to serve as class representatives. They agree with Plaintiffs' Counsel, who collectively have negotiated approximately 100 class action settlements, that the proposed settlement provides excellent benefits for the class. On June 13, 2017, the Court granted Plaintiffs' counsel's request to file the operative Fourth Amended Complaint and to withdraw as counsel for Dittmar and Tilton (ECF No. 137). (Perez Decl. ¶ 13.)

**D.      The Proposed Settlement Fully Resolves Plaintiffs' Claims**

**1.      Composition of the Settlement Class**

The Settlement Class consists of all pharmacists and pharmacy managers employed in a California warehouse by Defendant as such at any time during the period from April 3, 2010 through the date on which the Court grants preliminary approval of the settlement, or August 29, 2017, whichever date is earlier.  (Settlement Agreement ¶ 5.)[2]  There are approximately 1,175 Class Members (*id.* at ¶ 46), although the parties expect the class size to grow by a modest amount pending preliminary approval.

**2.      Settlement Consideration**

Plaintiffs and Defendant have agreed to settle all class claims and representative claims alleged in the Action in exchange for the Class Settlement Amount of $9,000,000.  The Class Settlement Amount includes: (1) settlement payments to Participating Class Members; (2) $3,000,000 in attorneys' fees and up to $125,000 in litigation costs/expenses to Plaintiffs' Counsel; (3) a $37,500 payment to the LWDA; (4) Settlement Administration Costs of approximately $17,500; and (5) Class Representative Enhancement Payments of up to $12,500, each, to Marjan Ataipour and Brian Kim for their services on behalf of the Settlement Class.  (Settlement Agreement ¶¶ 32-36.)

Subject to the Court approving Attorneys' Fees and Costs, the payment to the LWDA, Settlement Administration Costs, and the Class Representative Enhancement Payments, the Net Settlement Amount will be distributed to all Participating Class Members.  Because the Class Settlement Amount is non-reversionary, 100% of the Net Settlement Amount will be paid to Participating Class Members without the need to submit claims for payment.  (*Id.* at ¶ 36.)

---

[2] Defendant may exclude from the Settlement Class no more than three individuals who, since January 1, 2017, have been awarded by court or Labor Commissioner any amount in excess of $15,000 on account of any claim that would qualify as a Settled Claim.  (*Id.*)

### 3.   Formula for Calculating Settlement Payments

The share of the Net Settlement Amount going to the Class Members and Collective Members will be proportional to their number of Individual Shifts worked during the Class Period.  (Settlement Agreement ¶ 36.)  Individual Settlement Payments will be calculated as follows:

- Defendant will calculate the total number of shifts that each ("Individual Shifts") and all ("Class Shifts") Class Members worked during the applicable Settlement Period for Class Members.  Defendant will also calculate the total number of shifts that each ("Individual FLSA Shifts") and all ("Collective Shifts") Collective Members worked during the applicable Settlement Period for Collective Members. This information will be provided to the Settlement Administrator as part of the Class/Collective List.

- Ninety-Five Percent (95%) of the Net Settlement Amount will be allocated toward the settlement of the Released Claims ("Released Claims Fund"). Five Percent (5%) of the Net Settlement Amount will be allocated toward the settlement of the FLSA Released Claims ("FLSA Released Claims Fund").

- To determine each Class Member's estimated share of the Released Claims Fund, the Settlement Administrator will use the following formula: Class Members will receive two (2) points per Individual Shift worked as a Costco pharmacy manager during the Settlement Period for Class Members.  Class Members will receive one (1) point per Individual Shift worked as a Costco non-exempt pharmacist during the Settlement Period for Class Members.  Additionally, each Class Member will receive an additional five (5) total points if that Class Member terminated employment at Costco sometime on or after April 3, 2011 and during the Settlement Period.  The value of each individual point will be determined

by dividing the proceeds of the Released Claims Fund by the total points for Class Members, resulting in the "Point Value." Each Class Member's estimated share of the Released Claims Fund will be calculated by multiplying each individual Settlement Class Member's total number of points by the Point Value.

- To determine each Collective Member's estimated share of the FLSA Released Claims Fund, the Settlement Administrator will use the following formula: Collective Members will receive two (2) points per Individual FLSA Shift worked as a Costco pharmacy manager during the Settlement Period for Collective Members. Collective Members will receive one (1) point per Individual FLSA Shift worked as a Costco non-exempt pharmacist during the Settlement Period for Collective Members. The value of each individual point will be determined by dividing the proceeds of the FLSA Released Claims Fund by the total points for Collective Members, resulting in the "FLSA Point Value." Each Collective Member's estimated share of the FLSA Released Claims Fund will be calculated by multiplying each individual Settlement Collective Member's total number of points by the FLSA Point Value.

- The Individual Settlement Payments will be reduced by any required legal deductions for each Participating Class Member.

- The entire Net Settlement Amount will be paid for the benefit of Participating Class and Collective Members. Defendant maintains no reversionary right to any portion of the Net Settlement Amount. If there are any timely submitted Requests for Exclusion, the Settlement Administrator shall proportionately increase the Individual Settlement Payments for each Participating Class and Collective Member so that the amount distributed for their benefit equals 100% of the Net Settlement Amount.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

If there are approximately 1,175 Class Members, then the average net recovery would be approximately $4,930. This average net recovery is considerably greater than many wage and hour class action settlements approved by California state and federal courts. *See, e.g.*, *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento County Super. Ct.) (average net recovery of approximately $80); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

### 4.     Release by the Settlement Class

In exchange for the Class Settlement Amount, Plaintiffs and Class Members who do not opt out will agree to release the Released Claims, which are defined as:

> All state law claims, rights, demands, liabilities, and causes of action, that were pleaded or could have been pleaded based on the facts alleged in the Action, with a waiver of all rights and benefits afforded by section 1542 of the Civil Code of the State of California as to any claim that has been pleaded. Among the claims released are those under the Wage Order and Labor Code sections regarding unpaid wages, unpaid overtime wages, missed meal or rest breaks, unpaid meal or rest break premium pay, liquidated damages, unlawful deductions from wages, conversion of wages, wage-statement penalties, "waiting time" penalties, and unreimbursed expenses, including money recoverable under Labor Code sections 201, 202, 203, 204, 212, 216, 218.5, 221, 222, 223, 225.5, 226, 226.3, 226.7, 227.3, 510, 512, 558, 1194, 2802 and claims under Business and Professions Code section 17200 et seq., and Labor Code section 2698 et seq. ("PAGA").

(Settlement Agreement ¶ 20.) The Released Claims are those that accrued during the

1   applicable Settlement Period.  (*Id.* at ¶ 26.)

2        In exchange for the Class Settlement Amount, Plaintiffs and Class Members who

3   opt into the FLSA collective action by cashing their settlement checks will release the

4   FLSA Released Claims, which are defined as all claims, rights, demands, liabilities, and

5   causes of action that were pleaded or could have been pleaded under the Fair Labor

6   Standards Act based on the facts alleged in the Action, including claims for unpaid

7   overtime wages and liquidated damages. (Settlement Agreement ¶ 11.)

8        The FLSA Released Claims are those that accrued during the applicable

9   Settlement Period.  (Settlement Agreement ¶ 26.)

10        Accordingly, the release is narrowly tailored to the claims alleged in the Action,

11   or that could have been alleged in the Action.  *See Int'l Union of Operating Engineers-*

12   *Employers Canst. Industry Pension, Welfare and Training Trust Funds v. Karr*, 994

13   F.2d 1426, 1430 (9th Cir. 1993) ("res judicata bars not only all claims that were actually

14   litigated, but also all claims that 'could have been asserted' in the prior action").

15   **III.   ARGUMENT**

16       **A.   Conditional Class Certification is Appropriate for Settlement**

17             **Purposes**

18        The parties seek conditional certification of the Settlement Class.  A party seeking

19   to certify a class must demonstrate that it has met all four requirements under Federal

20   Rule of Civil Procedure 23(a),[3] and at least one of the requirements of Rule 23(b)—in

21   this case, Rule 23(b)(3).  *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th

22   Cir. 2001).  Where, as here, workplace violations are at issue, "the key question for class

23   certification is whether there is a consistent employer practice [or policy] that could be a

24   basis for consistent liability."  *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D.

25

26        [3] Rule 23(a) provides that, to certify a class, Plaintiffs must demonstrate that "(1)
the class is so numerous that joinder of all members is impracticable; (2) there are

27   questions of law or fact common to the class; (3) the claims or defenses of the
representative parties are typical of the claims or defenses of the class; and (4) the

28   representative parties will fairly and adequately protect the interests of the class."

Cal. 2008).  Class certification is proper when the plaintiff provides substantial evidence of a company-wide policy on which her theory of liability is based, even if in practice that policy's implementation varied.  *See In re Taco Bell Wage & Hour Actions*, No. 07-01314-SAB, 2012 U.S. Dist. LEXIS 168219, at *19 (E.D. Cal. Nov. 27, 2012) (certifying meal period class where uniform policy was undisputed but defendant argued "as a matter of practice, the policy is carried out in a variety of ways") (*adopted in full*, 2013 U.S. Dist. LEXIS 380 (E.D. Cal. Jan. 2, 2013)).

### 1.    Plaintiffs' Theory of Liability Warrants Class Certification.

"[I]t is the plaintiff's theory that matters at the class certification stage, not whether the theory will ultimately succeed on the merits."  *Alonzo v. Maximus, Inc*., 275 F.R.D. 513, 525 (C.D. Cal. 2011) (citations omitted).  Rule 23's commonality analysis depends on whether a "basic theory of the [plaintiffs'] case" "can be proved on a classwide basis."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359, 131 S. Ct. 2541 (2011).  However, the fact that class members may have been affected by a defendant's uniform policies/practices to varying degrees, or have suffered varying damages, *is not a bar* to certification.  *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)  ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."); *see also Cortes v. Market Connect Group, Inc.*, 2015 WL 5772857, *2 (S.D. Cal. Sept. 30, 2015) (Hon. L. Burns), *citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.").

For a class to be certified, there must be questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Rule 23(b)(3) also requires that the common questions of law or fact predominate over any individual questions.  Thus, the Rule 23(a)(2) commonality inquiry and the Rule 23(b)(3) predominance inquiry overlap.  *See In re Autozone, Inc.*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012).  Here, each of Plaintiffs' theories of liability presents common legal and factual questions that predominate over

1   any individual issues.

2          **2.      Plaintiffs' Meal and Rest Period Claim Presents Predominant**

3                    **Common Issues of Law and Fact**

4          Plaintiffs allege that while they worked there, Costco had a policy which

5   prevented pharmacists from taking off-duty, uninterrupted rest breaks when they were

6   the only pharmacist on duty.  Costco's pharmacies remain open during rest breaks.

7   During single-pharmacist shifts, pharmacists must remain on call and ready to perform

8   certain duties that *only* a licensed pharmacist may perform, or to tend to emergencies.

9   Pursuant to Wage Order No. 5:

10              Every employer shall authorize and permit all employees to take
                rest periods, which insofar as practicable shall be in the middle of
11              each work period. The authorized rest period time shall be based on
                the total hours worked daily at the rate of ten (10) minutes net rest
12              time per four (4) hours or major fraction thereof. However, a rest
                period need not be authorized for employees whose total daily work
13              time is less than three and one-half (3 ½) hours. Authorized rest
                period time shall be counted, as hours worked, for which there shall
14              be no deduction from wages.

15         As explained in *Brinker Restaurant Group v. Superior Court*, 53 Cal. 4th 1004,

16  1029 (2012), "[e]mployees are entitled to 10 minutes' rest for shifts from three and one-

17  half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30

18  minutes for shifts of more than 10 hours up to 14 hours, and so on."  If the employer fails

19  to provide an employee with rest periods in accordance with California law—*e.g.* failing

20  to authorize and permit two rest breaks during an eight-hour shift—the employer must

21  pay the employee a full additional hour of compensation. 8 Cal. Code of Regs. § 11050,

22  subd. 12(B); Cal. Lab. Code § 226.7(b).  The California Supreme Court held that a

23  requirement that employees remain "on call" does not satisfy an employer's obligation

24  to relieve employees from employer control during rest periods. *Augustus v. ABM*

25  *Security Servs.*, *Inc.*, 2 Cal. 5th 257, 269 (2016).  In *Augustus*, the Court held that a

26  policy requiring employees to "respond [to work-related duties] if the need arose" did

27  not relieve the employees of control and violated the Labor Code. *Id.* at 270.  "In the

28  context of a 10-minute break that employers must provide during the work period, a

1   broad and intrusive degree of control exists when an employer requires employees to
2   remain on call and respond during breaks." *Id.*

3       Further, non-exempt employees within California are entitled to meal periods.
4   *See Brinker*, 53 Cal. 4th at 1018. ("[California state] law obligates employers to afford
5   their nonexempt employees meal periods and rest periods during the workday.")
6   California Labor Code section 512(a) provides, "An employer may not employ an
7   employee for a work period of more than five hours per day without providing the
8   employee with a meal period of not less than 30 minutes."

9       Costco's March 2007 Mandatory Pharmacist Break and Lunch Policy states that
10  "[p]harmacists working alone will take their breaks inside the pharmacy (unless this
11  requirement is prohibited by law)." The Break Policy also states that, although it was
12  Costco's "intention that pharmacists should be uninterrupted during their breaks", "[t]his
13  should not prohibit a pharmacist from offering to be available at his or her own
14  discretion and/or to conform to the regulations in the state where they practice."

15      Common questions predominate as to Plaintiffs' meal and rest period claim
16  because Defendant's rest period policy creates the following class-wide issues:

17      •   Whether Defendant violated California law by failing to authorize or
18          permit rest periods for each four (4) hours or a major fraction thereof.
19      •   Whether Defendant violated California law by failing to provide
20          employees with a meal period of not less than 30 minutes when they
21          worked over five hours.

22      The pertinent authorities support the contention that common questions of law
23  and fact predominate.  Foremost, in *Brinker*, the California Supreme Court held that the
24  trial court properly certified a rest period subclass in light of the evidence submitted
25  regarding a common, uniform non-compliant rest period policy.  *Brinker*, 53 Cal. 4th at
26  1033.  The California Supreme Court emphasized that "[c]laims alleging that uniform
27  policy consistently applied to a group of employees is in violation of the wage and hour
28  laws are of the sort routinely, and properly, found suitable for class treatment."  *Id.* at

1    1033 (*citing Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1299-1305 (2010));

2    *Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1533-38 (2008).

3         Accordingly, there is substantial evidence on which the Court could find that

4    common issues of fact and law predominate as to the meal and rest period claim.

5                    **3.    Plaintiffs' Off-the-Clock Claim Presents Predominant**

6                            **Common Issues of Law and Fact**

7         Plaintiffs allege that Defendant effectively required Class Members to work off-

8    the-clock as a result of their understaffing practices, which did not allow employees to

9    complete the tasks they were assigned during their scheduled shifts.  Specifically,

10   Plaintiffs allege that Defendant strongly discouraged Class Members from working

11   overtime, and thus Class Members felt pressure to work off-the-clock before the start of

12   and after the end of their scheduled shifts and while away from the workplace in order to

13   complete their assigned tasks without facing potential discipline for clocking overtime.

14        Evidence of "a systematic company policy to pressure or require employees to

15   work off-the-clock," renders the off-the-clock claim suitable for class treatment.

16   *Brinker*, 53 Cal. 4th at 1051 (explaining that common issues predominate where the

17   plaintiff "presented substantial evidence of a systematic company policy to pressure or

18   require employees to work off-the-clock"); *Norris-Wilson v. Delta-T Group, Inc*. 270

19   F.R.D. 596, 601 (S.D. Cal. 2010) (Hon. L. Burns) (holding that disparities as to

20   individual circumstances does not preclude certification).  Accordingly, there is

21   substantial evidence on which the Court could find that common issues of fact and law

22   predominate as to the off-the-clock claim.

23                    **4.    Plaintiffs' Other Claims Present Predominant Common Issues**

24                            **of Law and Fact**

25        Common issues of law and fact also predominate for Plaintiffs' other claims.

26   Labor Code section 226(a) requires employers to provide employees (along with their

27   wages) wage statements that include, among other things, "(1) gross wages earned,

28   (2) total hours worked by the employee . . . (5) net wages earned. . . (9) all applicable

hourly rates in effect during the pay period." "An employee suffering injury as a result of a knowing and intentional violation" of section 226(a) is entitled to at least fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000). Labor Code § 226(e). Plaintiffs allege that the wage statements issued to class members failed to comply with Labor Code Section 226 because they did not include payment for the time when class members were working off-the-clock. This issue could be resolved on a classwide basis. Whether Defendant's wage statements included all hours worked is an inherently common, certifiable question. Similar wage statement claims have been certified. *See*, *e.g.*, *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 374 (C.D. Cal. 2009) ("Accordingly, particularly in light of the fact that the pay stubs and settlement summaries provided to California drivers are standardized documents, the Court finds that Plaintiffs have demonstrated that certification of their pay stub claim is appropriate.").

Labor Code Section 201 and 202 required Costco to pay each terminated employee all wages earned and unpaid at the time of termination (or within 72 hours for employees who voluntarily terminate with less than 72 hours' notice). Plaintiffs allege that Costco never paid class members who are former employees for the time they worked when they were not clocked in, that Costco violated Sections 201 and 202, and that Costco must pay each separated employee a penalty in the amount of continuing wages at the regular rate for 30 days. This issue can be resolved on a class-wide basis.

### 5. Marjan Ataipour and Brian Kim Will Adequately Represent the Interests of the Proposed Settlement Class

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1) the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and

1    competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

2    The Rule 23(a) adequacy requirement is met here as Marjan Ataipour and Brian

3    Kim have and will represent putative Class Members with a focus and zeal true to the

4    fiduciary obligation that they have undertaken.  Plaintiffs' Counsel also satisfies the

5    Rule 23(a)(4) adequacy-of-counsel requirement.  *See Hanlon*, 150 F.3d at 1020 ("[W]ill

6    the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

7    class?").  The attorneys at Capstone Law, Gartenberg Gelfand Hayton LLP, and Caskey

8    & Holzman have successfully certified numerous class actions by way of contested

9    motion in state and federal court, and have negotiated settlements totaling over tens of

10   millions of dollars on behalf of hundreds of thousands of class members.  (*See* Perez

11   Decl. ¶¶ 14-18; Holzman Decl. ¶¶ 2-4; Gundzik Decl. ¶¶ 2-5.)

12                   **6.      Class Settlement Is Superior to Other Available Means of**

13                   **Resolution**

14   As this Court explained in *Cortes v. Market Connect Group, Inc.*, 2015 WL

15   5772857, superiority requires the Court to consider: (1) the class member's interests in

16   separate actions, (2) the extent of litigation concerning the controversy by class

17   members, (3) the desirability of concentrating the litigation in the particular forum, and

18   (4) the difficulties in managing a class action. *Id.* at *3, *citing Zinser v. Accufix Research*

19   *Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).  This Court further noted in *Cortes* that

20   "[w]hen analyzing these factors, the Court must 'focus on the efficiency and economy

21   elements of the class action so that cases allowed under subdivision (b)(3) are those that

22   can be adjudicated most profitably on a representative basis.'"  *Id., citing Zinser*, 253

23   F.3d at 1190.

24                   Consideration of these factors demonstrates that resolving all Class Members'

25   claims through a single class action is superior to a series of individual lawsuits.  "From

26   either a judicial or litigant viewpoint, there is no advantage in individual members

27   controlling the prosecution of separate actions.  There would be less litigation or

28   settlement leverage, significantly reduced resources and no greater prospect for

1  recovery." *Hanlon*, 150 F.3d at 1023.  Indeed, the terms of the Settlement negotiated on

2  behalf of the Class demonstrates the advantages of a collective bargaining and resolution

3  process.  There have been no similar or related lawsuits related to this action.  One of the

4  initial Plaintiffs performed all of her work in San Diego County, and many of the other

5  Class Members performed their work there.  And management of the class action will

6  not be an issue, because the matter has been resolved by means of the proposed

7  Settlement, which means that the Court will not be required to manage a trial or any

8  related proceedings. Instead, the settlement of this action on a class basis will

9  economically and efficiently provide a profitable resolution for the class members.

10  Addressing the allegations through a class action is superior to individual

11  litigation or any alternative methods that may exist.  This action was filed precisely

12  because Plaintiffs believed those alternatives, such as filing complaints with the LWDA,

13  would have proven ineffective in addressing the problem on a class-wide basis.

14  Additionally, although the value of the claims is not insignificant, the amount in

15  controversy is not nearly enough to incentivize individual action.  *See Wolin v. Jaguar*

16  *Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an

17  individual basis would be dwarfed by the cost of litigating on an individual basis, this

18  [superiority] factor weighs in favor of class certification.").  As the class action device

19  provides the superior means to effectively and efficiently resolve this controversy, and as

20  the other requirements of Rule 23 are each satisfied, certification of the Settlement Class

21  proposed by the Parties is appropriate.

22  **7.      Conditional Certification of the Collective Action Class is Also**

23  **Appropriate**

24  To maintain an opt-in class under Fair Labor Standard Act ("FLSA"), "plaintiffs

25  must demonstrate that they are 'similarly situated.'"  29 U.S.C. § 216(b); *Wynn v. Nat'l*

26  *Broadcasting Co., Inc.*, 234 F. Supp. 2d 1067, 1081-82 (C.D. Cal. 2002).  At the

27  preliminary approval stage, an opt-in class can be conditionally certified under a "fairly

28  lenient standard."  *See Carter v. Anderson Merchandizers LP*, No. 08-0025-VAP, 2010

WL 1946784, *3 (C.D. Cal. May 11, 2010) (explaining the court's application of conditional certification in granting preliminary approval). At this stage, courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (*Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir.2001)).  The same rationale for finding that the Rule 23(b)(3) class should be certified—that Plaintiffs and Class Members were subject to Costco's common policies and practices that form the factual nucleus for the claims at issue—applies here.  The Court therefore should conditionally certify an FLSA opt-in class.

**B.      The Proposed Class Action Settlement Should Receive Preliminary Approval**

**1.      The Court's Scrutiny of the Proposed Settlement is Lowered at the Preliminary Approval Stage**

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed.  Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps:

1.      Preliminary approval of the proposed settlement;

2.      Notice to the class providing them an opportunity to exclude themselves; and

3.      A final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

At the preliminary approval stage, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered.  *See generally* 3 Conte & Newberg, *Newberg on Class Actions*, § 7.20 (4th ed. 2002).  For preliminary approval, scrutiny of the settlement is reduced. *In re Nat'l Football League Players' Concussion Injury Litig.*,

961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered."); *see also, Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 (S.D. Cal. Aug. 4, 2016).

The Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. Newberg, § 11:25. Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

The judicial policy favoring settlement of class action suits should guide the Court in evaluating the fairness of a settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). As this Circuit has observed, "settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

## 2. The Proposed Class Action Settlements is Procedurally Fair, Adequate, and Reasonable

### (a) The Settlement, as the Product of Arms'-Length Negotiation, is Entitled to a Presumption of Fairness

In evaluating the Settlement for preliminary approval, the Court "first considers 'the means by which the parties arrived at settlement.'" *In re Volkswagen "Clean*

1   *Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.* ("*Volkswagen*"), 2016 WL

2   4010049, *14 (N.D. Cal. July 26, 2016).  "Preliminary **approval is appropriate if the

3   proposed settlement is the product of serious, informed, non-collusive negotiations." *Id.*

4         Here, the Parties participated in mediation with Mark S. Rudy, a respected

5   mediator of wage and hour class actions.  Mr. Rudy helped to manage the Parties'

6   expectations and provided a useful, neutral analysis of the issues and risks to both sides.

7   A mediator's participation weighs considerably against any inference of a collusive

8   settlement.  *See In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),

9   2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*,

10   236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement

11   negotiations helps to ensure that the proceedings were free of collusion and undue

12   pressure.")  At all times, the Parties' negotiations were adversarial and non-collusive.

13         The Parties were represented by experienced class action counsel throughout the

14   negotiations resulting in this Settlement.  Plaintiffs were represented by Capstone Law

15   APC, Gartenberg. Gelfand, Hayton LLP, and Caskey & Holzman.  Plaintiffs' Counsel

16   employ seasoned class action attorneys who regularly litigate wage and hour claims

17   through certification and on the merits, and have considerable experience settling wage

18   and hour class actions.  (*See* Perez Decl. ¶¶ 14-18; Holzman Decl. ¶¶ 2-4; Gundzik Decl.

19   ¶¶ 2-5.)  Defendant was represented by Seyfarth Shaw LLP, which operates a respected

20   wage and hour defense practice.

21         As this Settlement is the "result of arms'-length negotiations by experienced class

22   counsel, [it is] entitled to 'an initial presumption of fairness.'" *Volkswagen*, 2016 WL

23   4010049, at *14 (internal citation omitted).

24                    **(b)      There Are No Obvious Deficiencies with the Settlement**

25                              **or Preferential Treatment to Certain Class Members**

26         The Court must also ask whether "the Settlement contains any obvious

27   deficiencies" and "whether the Settlement provides preferential treatment to any Class

28   Member." *Volkswagen*, 2016 WL 4010049, at **14, 16. This Settlement contains no

1   "glaring deficiencies" *Id.* at \*14.  The Settlement does not provide for a reversion of

2   unpaid settlement funds to Defendant or distribute a disproportionate share of the

3   settlement to the attorneys that requires closer scrutiny in the Ninth Circuit.  *See id.* at

4   \*14-15 (applying the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig.*, 654

5   F.3d 935, 946 (9th Cir. 2011)).

6          Moreover, no segment of the Class is given preferential treatment, as the amount

7   to be paid in settlement payment depends simply on the number of shifts that each Class

8   Member or Collective Member has worked and whether he or she was a Pharmacy

9   Manager or terminated employment.  Pharmacy Managers will receive more points per

10  shift because discovery confirmed that Pharmacy Managers' duties include tending to

11  various paperwork that is not part of a non-managers' duties.  That, in turn, results in a

12  greater amount of off-the-clock work and justifies adjusting the settlement calculations

13  to account for that difference.  Terminated employees uniquely suffered the prospect of

14  being denied timely wages upon termination.  The Class Representatives will also seek,

15  at a later time (when the Motion for Attorneys' Fees is filed), incentive payments in an

16  amount that are well within the range of such awards in the Ninth Circuit for their work

17  on the behalf of the Class, the risks to their reputations that was undertaken, and for their

18  execution of agreements that do not apply to the other Class Members.  *See*, *e.g.*, *La*

19  *Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014 WL 2967475, at

20  \*8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff for services to

21  the Class, reputational harm and general release).  Accordingly, the Settlement is

22  procedurally fair, adequate and reasonable.

23          **(c)      The Parties Conducted a Thorough Investigation of the**

24                  **Factual and Legal Issues**

25          The Settlement is the product of informed negotiations following extensive

26  investigation by Plaintiffs' Counsel.  During this matter's pendency, the Parties

27  thoroughly investigated and researched the claims in controversy, their defenses, and the

28  developing body of law.  The investigation entailed the exchange of information

pursuant to formal and informal discovery methods, including interrogatories and requests for production, numerous meet and confer negotiations, motions concerning the scope of discovery and numerous of depositions.  Defendant initially refused to produce documents for any locations beyond the two in which the initial Plaintiffs were employed. Plaintiffs' counsel moved to compel additional discovery, as a result of which the Magistrate ruled that Plaintiffs' certification-related discovery could extend to numerous warehouses throughout Southern California.  In the course of written discovery, Plaintiffs received, *inter alia*, the following information and evidence with which to properly investigate and evaluate the claims, including: (1) Class Member contact information; (2) Defendant' written policies regarding, e.g., rest period policies; (3) wage statements; (4) emails produced consistent with search terms which were heavily negotiated by the Parties; and (5) employee time punch records.  In total, Defendant produced over 8,000 pages of documents.  (*See* Perez Decl. ¶ 7.)

Apart from written discovery, Plaintiffs retained an expert, David Lewin of Berkeley Research Group, who designed a survey for dissemination to all the class members within Costco's Southwest Division and which was directed at confirming that working off-the-clock was a common experience, quantifying the amount of unpaid overtime, and identifying the tasks class members performed when they were working off-the-clock.  (Perez Decl. ¶ 8.)

After Defendant produced Class Member contact information, Plaintiffs' Counsel interviewed Class Members to determine the extent and frequency of alleged Labor Code violations, to learn more about their day-to-day circumstances giving rise to the alleged violations, and to obtain declarations in support of Plaintiffs' motion for class certification.  (Perez Decl. ¶ 9.)

Overall, Plaintiffs' Counsel performed an exhaustive investigation into the claims at issue, which included:  (1) determining Plaintiffs' suitability as putative class representatives; (2) evaluating all of Plaintiffs' potential claims; (3) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the

type of employer; (4) interviewing putative Class Members to gather information about potential claims, identify additional witnesses, and obtain declarations in support of the motion for class certification; (5) analyzing Defendant's labor policies and practices; (6) deposing Defendant's persons most knowledgeable as well as other witnesses;  (7) defending the original Named Plaintiffs' depositions; (8) researching settlements in similar cases; (9) conducting a discounted valuation analysis of claims; (10) drafting the mediation brief; (11) participating in mediation; and (12) drafting and finalizing the Settlement Agreement.  The extensive document and data exchanges have allowed Plaintiffs' Counsel to appreciate the strengths and weaknesses of the claims alleged against Defendant and the benefits of the proposed Settlement.  (Perez Decl. ¶ 10.)

### 3. The Proposed Settlement Is Substantively Within the Range of Reasonableness

To determine whether a settlement should be preliminarily approved, the Court should also evaluate whether it "falls within the range of possible approval." *Volkswagen*, 2016 WL 4010049, at *16.  In assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted).  There is "no single formula" to be applied, but the Court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Plaintiffs were cautiously optimistic about the chances of certifying certain claims and ultimately prevailing at trial.  Nevertheless, Plaintiffs recognize that if the litigation had continued, they may have encountered significant legal and factual hurdles that could have prevented class certification, precluded the Class from obtaining full recovery for their claims, or perhaps even resulted in zero recovery (under the worst case scenario).  In particular, Plaintiffs' decision to settle was influenced by the following

1    considerations:  (i) the risks of class certification; (ii) the strength of Defendant' defenses

2    on the merits; (iii) the risk of losing on any of a number of dispositive motions that could

3    have been brought between now and trial (e.g., motions to decertify the class, motions

4    for summary judgment, motion to strike the PAGA claims as unmanageable, and/or

5    motions in limine)--motions that  may have eliminated all or some of Plaintiffs' claims,

6    or barred evidence necessary to prove such claims; (iv) the risk of losing at trial; (v) the

7    chances of a favorable verdict being reversed on appeal.

8         Additionally, early resolutions save time and money that would otherwise go to

9    litigation.  The Parties' resources, as well as the Court's, would be further taxed by

10   continued litigation.  And if this action had settled following additional litigation, the

11   settlement amount would likely have taken into account the additional costs incurred,

12   such that there may have been less available for Class Members. Cost savings is one

13   reason why the law strongly favors early settlement, particularly of complex litigation.

14   *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998) (noting

15   the "strong judicial policy that favors settlements, particularly where complex class

16   action litigation is concerned").  This concern also supports settlement.

17        In summary, although Plaintiffs and their counsel maintained a strong belief in the

18   underlying merits of the claims, they also acknowledge the significant challenges posed

19   by continued litigation.  Accordingly, when balanced against the risk and

20   expense of continued litigation, the settlement is fair, adequate, and reasonable.  *Linney*

21   *v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a

22   settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

23        **C.    The Court Should Approve the PAGA Component of the Settlement**

24        Pursuant to the Settlement Agreement, $50,000 from the Class Settlement

25   Amount shall be allocated to the resolution of the PAGA claim, of which 75% ($37,500)

26   will be paid directly to the LWDA, and the remaining 25% will be added to the Net

27   Settlement Amount.  (Settlement Agreement ¶ 35.)  This result was reached after good-

28   faith negotiation between the parties.  Where PAGA penalties are negotiated in good

faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see*, *e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

The PAGA component of the Settlement is the product of arms'-length negotiations between counsel well versed in the intricacies of PAGA litigation and, more importantly, wage and hour employment law. (*See* Perez Decl. ¶¶ 14-18; Holzman Decl. ¶¶ 2-4; Gundzik Decl. ¶¶ 2-5.) Plaintiffs' Counsel conducted extensive formal and informal investigation and discovery into the claims at issue and have assessed both the strengths and weaknesses of the claims and the risks of continued litigation. Based on the preceding, Plaintiffs' Counsel strongly believe that the PAGA component of the Settlement appropriately reflects the relative strengths of the Parties' respective claims and defenses, as well as the substantial risks presented in continuing the litigation.

**D.** **The Court Should Preliminarily Approve the Negotiated Class Representative Enhancement Payments**

The Settlement provides for Class Representative Enhancement Payments of $12,500,[4] each, to Marjan Ataipour and Brian Kim for their services on behalf of the Settlement Class and for agreeing to broader releases than those required of other Class

---

[4] The amounts of the requested incentive awards are also reasonable by reference to the amounts that district courts in this Circuit have repeatedly found to be reasonable for wage and hour class action settlements. *See*, *e.g.*, *Bernal v. Davita, Inc.*, Case No. 5:12-cv-03255-PSG, *2 (N.D. Cal. Jan. 14, 2014) ($10,000 incentive payment in 3.4 million wage-and-hour class settlement); *York v. Starbucks Corp.*, No. 08-07919 GAF, Dkt. No. 239, at *4 (C.D. Cal. Oct. 29, 2013) (approving enhancement award of $10,000 in a 3 million wage-and-hour class settlement); *Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) (approving enhancement awards of $20,000 each to four class representatives in a $3.5 million settlement of an employment class action); *Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119, **34-37 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 award); *Amochaev v. Citigroup Global Markets, Inc.*, No. 05-1298 PJH (N.D. Cal. Aug. 13, 2008) (approving enhancement awards of $50,000 and $35,000 to employees in light of factors that included fear of workplace retaliation).

1   Members. "Incentive awards are fairly typical in class action cases . . . Such awards are

2   discretionary and are intended to compensate class representatives for work done on

3   behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir.

4   2009) (citing 4 *William B. Rubenstein et al.*, *Newberg on Class Actions* § 11:38 (4th ed.

5   2008)).  These payments work both as an inducement to participate in the suit and as

6   compensation for time spent in litigation activities.  *See In re Mego Fin. Corp. Sec.*

7   *Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (describing the service award as an incentive to

8   the class representatives); *Matter of Continental Illinois Securities Litig.*, 962 F.2d 566,

9   571 (7th Cir. 1992) (stating that an enhancement award should be in such an amount "as

10   may be necessary to induce [the class representative] to participate in the suit").

11          Plaintiffs will file a formal motion for the negotiated Class Representative

12   Enhancement Payments once preliminary approval of the Settlement is granted.

13          **E.       The Court Should Preliminarily Approve the Negotiated Attorneys'**

14                     **Fees and Costs**

15          Under California law,[5] the common fund method for awarding attorneys' fees is

16   appropriate where, as here, attorneys have been instrumental in creating a settlement

17   fund that benefits all class members.  *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977)

18   (noting that federal and state courts have long recognized that when attorneys create a

19   common fund that benefits a class, the attorneys have an equitable right to be

20   compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48

21   _____

22          [5] In diversity actions, federal courts look to state law in determining whether a
        party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif.*
23      *Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent
        has applied state law in determining not only the right to fees, but also in the method of
24      calculating the fees").  The state law governing the underlying claims in a diversity
        action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,
25      1047 (9th Cir. 2002).  Because CAFA operates to modify the diversity requirement, "the
        *Erie* doctrine still applies so that state substantive law governs such claims in federal
26      court."  *See* Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil
        Procedure Before Trial, California & 9th Cir. Editions (The Rutter Group, 2015)
27      paragraph 10:497.5.  As the Ninth Circuit observed, "even after CAFA's enactment,
        *Erie*-related doctrines ensure that, for the most part, removal of a CAFA case from state
28      to federal court produces a change of courtrooms and procedure rather than a change of
        substantive law." *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).

1    (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results

2    oriented rather than process-oriented, it better approximates the workings of the

3    marketplace' than the lodestar approach." [citation omitted]).  Although California has

4    no benchmark, California courts routinely award attorneys' fees equalling approximately

5    one-third of the common fund's total potential value or higher.  *See*, *e.g.*, *Laffitte v.*

6    *Robert Half Int'l*, 1 Cal. 5th 480 (2016) (affirming a fee award representing one-third of

7    the common fund); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008)

8    ("[S]tudies show that . . . fee awards in class actions average around one-third of the

9    recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements:  An*

10   *Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35

11   (independent studies of class action litigation nationwide have come to a similar

12   conclusion that a one-third fee is consistent with market rates).

13        Plaintiffs will file a formal motion for the negotiated attorneys' fees and costs

14   once preliminary approval of the Settlement is granted.

### F.    The Proposed Class Notice Adequately Informs Class Members About the Case and Proposed Settlement

17        The proposed class settlement notice and claims administration procedure satisfy

18   due process.  Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to

19   direct the litigants to provide Class Members with the "best notice practicable" under the

20   circumstances, including "individual notice to all members who can be identified

21   through reasonable effort."  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173, 94 S. Ct.

22   2140, 2150, 40 L. Ed. 2d 732, 746 (1974).  Under Rule 23(c)(2), notice by mail provides

23   such "individual notice to all members."  *Id.*  Where the names and addresses of Class

24   Members are easily ascertainable, individual notice through the mail constitutes the "best

25   notice practicable."  *Id.* at 175.

26        The Notice of Class and Collective Action Settlement ("Class Notice") was

27   jointly drafted and approved by the Parties and provides Settlement Class Members with

28   all required information so that each member may make an informed decision regarding

his or her participation in the Settlement.  Class Members will have 45 days from mailing of the notices to object to or opt out of the settlement. The Class Notice provides information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definition; the deadlines by which Class Members must submit Requests for Exclusion or objections; the date for the final approval hearing; the formula used to calculate settlement payments and the class member's estimated settlement payment; instructions on how to dispute the number of Individual Shifts identified for each Class Member; a statement that the Court has preliminarily approved the settlement; a statement that Class Members will release the settled claims unless they opt out; and noticed of pending lawsuits with overlapping claims.  Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).[6]

The Class Notice summarizes the proceedings and the terms and conditions of the Settlement in an informative and coherent manner, complying with the statement in *Manual for Complex Litigation*, *supra*, that "the notice should be accurate, objective, and understandable to Class Members . . . ."  *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211.  The Notice states that the Settlement does not constitute an admission of liability by Defendant, and that Final Approval has yet to be made.  The Notice thus complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.  Rule 23(c)(2)and (e); *Manual* §§ 8.21, 8.39; *Manual* §§ 30.211, 30.212.

The Settlement Administrator will mail the Class Notice to all Settlement Class Members via first class United States mail.  (Settlement Agreement ¶ 40.)  In the event any Notices are returned as undeliverable, the Settlement Administrator will attempt to locate a current address for the affected Class Members using, among other resources, a computer/SSN and "skip trace" search to obtain an updated address.  (*Id.* ¶ 41).  This

---

[6] For the opt-in class under 29 U.S.C. § 216(b), each Class Member will have opted-in by cashing the settlement check. A cover letter accompanying the check will advise Class Members that by cashing the check, they will have opted in to the FLSA collective action and will be deemed to have released their claims under the FLSA.

1   method was negotiated by the Parties to maximize the Class Member notification rate

2   while ensuring cost effective administration of the Settlement.

3   **IV.   CONCLUSION**

4          The Parties have negotiated a fair and reasonable settlement of claims.  Having

5   appropriately presented the materials and information necessary for preliminarily

6   approval, the Parties request that the Court preliminarily approve the settlement.

7

8   Dated:  June 16, 2017                          Respectfully submitted,

9

10                                     By: _____

11                                          Raul Perez
                                            Andrew J. Sokolowski
12                                          Jennifer Bagosy
                                            Suzy E. Lee

13                                          **Capstone Law APC**
                                            Attorneys for Marjan Ataipour and
14                                          Brian Kim

15

16

17

18

19

20

21

22

23

24

25

26

27

28